**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jesus D.,[1]

   Petitioner,

v.

Todd Blanche, *Attorney General*;
Markwayne Mullin, *Secretary of Homeland Security*; David Venturella, *Acting Director of U.S. Immigration & Customs Enforcement*; Marcos Charles, *Acting Executive Associate Director for Enforcement and Removal Operations*; David Easterwood, *Field Office Director for Enforcement and Removal Operations*; U.S. Immigration & Customs Enforcement; U.S. Department of Homeland Security; and Joel Brott, *Sherburne County Sheriff*;

   Respondents.

File No. 26-CV-3370 (JMB/DTS)

**ORDER**

---

Elizabeth Sue Eckholm, Joseph T. Heegard, and Nicholas Ratkowski, Ratkowski Law, St. Paul, MN, for Petitioner Jesus D.

Derek Ganzhorn, and David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, David Easterwood, U.S. Immigration & Customs Enforcement, and U.S. Department of Homeland Security.

---

   This matter is before the Court on Petitioner Jesus D.'s Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241. (Doc. No. 1 [hereinafter, "Pet."].)

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Respondents Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, David Easterwood, U.S. Immigration & Customs Enforcement, U.S. Department of Homeland Security, and David Easterwood are named in the Petition.  For the reasons explained below, the Court grants the Petition.

### FINDINGS OF FACT

1.      Jesus D. is a citizen of Mexico and a resident of Burnsville, Minnesota, where he is gainfully employed, married to a United States citizen, and raising their United States citizen son.  (Pet. ¶ 22; Doc. No. 7-2 at 1.)

2.      Jesus D. entered the United States without inspection in 2016.  (Pet. ¶ 22.)

3.      Jesus D. has one prior conviction from January 9, 2024, for driving while impaired.  (Doc. No. 7 ¶ 6.)

4.      On June 24, 2026, Immigration and Customs Enforcement (ICE) encountered Petitioner at the Dakota County Jail.  (Id. ¶ 8.)  The next day, ICE issued an administrative warrant, Form I-200, for Jesus D., and ICE lodged an Immigration Detainer, Form I-247A, with the Dakota County Jail.  (Id. ¶ 9.)

5.      On June 26, 2026, ICE served the Form I-200 on Jesus D. in Hastings, Minnesota.  (Id. ¶ 10; Doc. No. 7-3 at 1.)  The Form I-200 is signed by an unknown immigration officer, and the signature is not legible.  (Id.)  The Form I-200 also does not include any specified time of service (see id.), and the record presented does not include any information concerning when the Form I-200 was served.[2]

---

[2] Respondents submitted a declaration made by an ICE deportation officer, Steven Draves, to verify certain facts around Jesus D.'s detention.  (Doc. No. 7.)  The Court observes that

6.     At some unknown time thereafter, Dakota County officials transferred custody of Jesus D. to Respondents, and at some unknown time after that, Respondents transported Jesus D. to the Bishop Henry Whipple building in Fort Snelling, Minnesota. (Doc. No. 7 ¶¶ 9–10; Doc. No. 7-2 at 2.)

7.     After this transfer of custody and transportation from one detention facility to another, Respondents issued a Notice to Appear (NTA) for Jesus D.  (Doc. No. 7 ¶ 11.) The NTA, was signed by ICE Officer Holien, a different officer than the person who signed the Form I-200.  (Doc. No. 7-1 at 1.)  The NTA does not include any specified time of service or time of issuance (*see* Doc. No. 7-1), and the record presented does not include any information concerning when the NTA was served.

8.     On July 22, 2026, Jesus D. filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Pet.)  He seeks immediate release.  (*Id.* at 42.)  Respondents timely filed their response on July 24, 2026.  (Doc. Nos. 6–7.)

## DISCUSSION

Jesus D. seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, requesting that the Court declare that his detention is unlawful and order Respondents to release him from custody.  (*Id.* at 41–43.)  For their part, Respondents argue that Jesus D. is subject to

---

Draves does not attest to having personal knowledge of the facts and circumstances discussed in the declaration; instead, the declaration includes a boiler plate paragraph explaining that Draves relies on his "personal and professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers."  (Doc. No. 7 ¶ 3.)  Absent a declaration by someone with personal knowledge of the detention and transportation of Jesus D., the record contains no evidence of when the Form I-200 was served.

mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). For the reasons set forth below, the Court grants the Petition.

### A. Constitutional Guarantee of Habeas Review and Due Process

As a threshold matter, the Court notes that a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the ultimate burden of proving that his detention is illegal by a preponderance of evidence. *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025) (citing *Aditya W.H.*, 782 F. Supp. 3d at 703). In addition, the Court concludes that it has jurisdiction to hear this Petition. Under section 2241, federal courts have jurisdiction to order the release of a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

### B.      Inapplicability of 8 U.S.C. § 1225

It is an undisputed matter of fact that Respondents detained Jesus D. pursuant to their discretionary authority under 8 U.S.C. § 1226.  The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations."  (Doc. No. 7-3 at 1.)[3] In response to the Petition, however, Respondents advance a different basis for the detention of Jesus D.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila*, 170 F.4th 1133–35 (concluding that section 1225(b)(2) requires the mandatory detention non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry).  *But see Rodriguez Vazquez v. Bostock*, __F.4th__, __, No. 25-6842, 2026 WL 2196424, at *9, 16 (9th Cir. July 30, 2026) (rejecting Respondents' "newfound interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problem," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits).

---

[3] To the extent that Respondents argue that the reference to 8 U.S.C. § 1226 is not related to the statutory authority for issuing the Form I-200, but is instead a reference to who may serve the Form I-200, the Court disagrees for two reasons. First, section 1226 does not discuss who can serve or issue warrants of arrest with any specificity.  Thus, Respondents' interpretation renders the specific reference to section 1226 meaningless.  Second, Respondents' interpretation conflicts with other important regulations, such as 8 C.F.R. § 287.5(e)(3), which authorizes certain immigration officers to serve warrants of arrest only for "administrative immigration violations issued under section [1226]."

This Court concludes that Respondents cannot now change the basis for the detention of Jesus D.  He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions.  Thus, just as it is stated in the Form I-200 on which the detention was based, the Court concludes that the Respondents detained Jesus D. pursuant to the framework of 8 U.S.C. § 1226.  *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### C.    Invalidity of Warrant

The Court next considers whether Jesus D. was detained to a valid warrant.[4]  For the reasons discussed below, the Court concludes he was not.

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen]

---

[4] Respondents do not seek to justify Jesus D.'s detention under the provisions of 8 U.S.C. § 1357(a).  (*See* Doc. No. 6 at 18.)  Indeed, given that Jesus D. was detained when ICE encountered him, immigration officers would have had no authority to make a warrantless arrest.  *See* 8 U.S.C. § 1357(a)(2) (stating that an immigration official may conduct a warrantless arrest "only if he has reason to believe that the [noncitizen] . . . is likely to escape before a warrant can be obtained for his arrest.").  Jesus D.'s exact whereabouts were known to ICE, and officers had no reason to believe that he was likely to escape.

is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). A Form I-200 is an administrative warrant which authorizes detention of a non-citizen's if it is issued "*[a]t the time of issuance* of the [NTA], *or at any time thereafter* and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b) (emphasis added). Putting both rules together, DHS may detain a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). This is because an NTA is a "'case-initiating pleading . . . like an indictment in a criminal case . . . that serves as the basis for commencing a grave legal proceeding.'" *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 6 (D. Minn. May 26, 2026), Doc. No. 9 (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021)). Therefore, a warrant issued before removal proceedings have begun would improperly purport to exercise authority that does not yet exist. *Id.*

In this case, Respondents did not follow this required sequence. The record presented establishes that while the Form I-200 and the NTA may have both been served on June 26, 2026, they were certainly not issued or served at the same time, in the same location, or by the same officer. (*See* Doc. No. 7 ¶¶ 9–11; Doc. No. 7-1 at 1; Doc. No. 7-2 at 2; Doc. No. 7-3 at 1.) Indeed, the Form I-200 was served on Jesus D. at the Dakota County Jail in Hastings (Doc. No. 7-3 at 1), after which time, custody of Jesus D. was transferred to Respondents and Jesus D. was transported to a different city and different county. (Doc. No. 7 ¶¶ 9–10; Doc. No. 7-1 at 1.) The NTA was issued at some unspecified time after this transfer and transport. (Doc. No. 7-1 at 1.) This gap in time and location

7

between service of the Form I-200 and the issuance of the NTA compels the Court to conclude that the Form I-200 did not conform to the requirements of section 236.1(b) and cannot support a lawful detention.  *See Gonzalez Ochoa*, 816 F.Supp.3d at 927 (stating that, despite an otherwise valid warrant, the fact that the NTA "was not issued until some unspecified time later in the day" meant that ICE did not have lawful authority to arrest the petitioner.); *Luis A.S.*, slip op. at 7–8 (holding the same).

Because Jesus D.'s detention was pursuant to an invalid warrant and therefore unlawful, immediate release is the appropriate remedy.  *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28, (S.D. Iowa 2026) (concluding ICE had no authority to arrest petitioner relying on Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where Form I-200 "was not issued until after [petitioner's] arrest and initial detention"); *see also, e.g.*, *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking following arrest in the field); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding DHS's detention of petitioner under section 1226(a) was unlawful because DHS arrested petitioner pursuant to Form I-200 that was invalid by virtue of being issued

8

prior to issuance of NTA); *Marinero v. Bondi*, No. 26-CV-1007 (JMG), 2026 WL 357653,

at *1 (D. Minn. Feb. 9, 2026) ("[I]ssuing an administrative warrant after an arrest . . . isn't

good enough to trigger § 1226(a).").[5]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT Petitioner Jesus D.'s Petition for a Writ of Habeas

Corpus (Doc. No. 1) is GRANTED AS FOLLOWS:

1.  Respondents are ORDERED to release Petitioner Jesus D. <u>immediately</u>, with no conditions of release, and in any event no later than <u>4:00 p.m. CT on August 13, 2026</u>.

2.  On or before <u>11:00 a.m. CT on August 14, 2026</u>, counsel for Respondents shall file a letter affirming that they have released Petitioner Jesus D.

3.  On or before <u>11:00 a.m. August 14, 2026</u>, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly

---

[5] Although the Court need not address the question of whether Jesus D.'s detention violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge*, 424 U.S. 319, 334–335 (1976), due-process factors tip in Jesus D.'s favor. Jesus D. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available and inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Jesus D.'s ongoing detention is also unlawful for this reason as well. *See, e.g., R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

9

provided Petitioner with certified copies of any and all immigration-related documentation).  Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589.  If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property."  If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4.   Petitioner Jesus D. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5.   To the extent Petitioner Jesus D. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 12, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court